**PHŒNIX OIL CO. et al. v. McLARREN et al.**
**(No. 10228.)**

(Court of Civil Appeals of Texas. Fort Worth. June 17, 1922. Rehearing Denied Oct. 14, 1922.)

1. **Master and servant ☞35—Discharged employee's remedy action for damages.**

For any unjust discharge of one employed by trustees of a company as its general manager and secretary and treasurer for a year, his remedy is by action for damages, and he may not retain his position and its books and funds.

2. **Joint-stock companies and business trusts ☞17—Trustees cannot divest themselves of authority by employing a general manager.**

Trustees, who by a company's declarations of trust are, without reservation, given absolute control and management of its affairs, cannot, under the rules governing trusts, without resigning, divest themselves of the authority to manage and control its property and affairs, as by employing a general manager not subject to their control.

3. **Joint-stock companies and business trusts ☞20—Real danger necessary for disturbing trustees' possession by appointment of receiver.**

Trustees' possession will not be interfered with by the appointment of a receiver, unless there is real danger from their misconduct.

4. **Joint-stock companies and business trusts ☞20—General allegations of fraud of trustees insufficient for appointment of receiver.**

Mere general allegations of dishonesty and fraudulent designs, without allegation of specific act, do not justify taking property from trustees and putting it in the hands of a receiver.

5. **Receivers ☞3—Receivership ancillary remedy.**

Appointment of a receiver may not be the· main purpose of a suit, but a receivership is merely an ancillary remedy.

6. **Receivers ☞6—Not appointed if there is another safe remedy.**

Appointment of a receiver should not be made when there is another and safe remedy, or less stringent means of protecting the property can be found.

7. **Joint-stock companies and business trusts ☞17—Trustees of one company may not engage in partnership with those of other companies.**

The trustees of one company operating under a declaration of trust may not engage in a partnership with the trustees of another company so operating, as thereby each set of trustees would divest itself of the personal duty to manage and control the business confided to its care.

8. **Joint-stock companies and business trusts ☞23—Company not wound up at instance of shareholder while in trustees' hands.**

A shareholder in a joint-stock association cannot have its affairs·wound up and its assets distributed during the period for which, by declaration of trust of the company, management of its affairs was put in the hands of trustees, at least in the absence of a very clear showing of necessity.

9. **Trusts ☞160(2)—Will not be permitted to lapse for lack of trustees.**

Equity will not permit a trust to lapse for lack of trustees, but will appoint them.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**10. Joint-stock companies and business trusts ⬩⬩⬩17—Equity can remove trustees on showing of fraud or unfitness.**

A court of equity can remove trustees on a proper showing of their fraud or unfitness, and this though the declaration of trust, by which the affairs of a joint-stock association were put in the hands of trustees, did not reserve to the shareholders the right to remove them.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Suit by C. C. Cooper and others, as trustees of the Phœnix Oil Company, against A. G. McLarren and others. From an adverse judgment, plaintiffs appeal. Reversed and remanded.

Samuels & Brown, of Fort Worth, for appellants.

Capps, Cantey, Hanger & Short, of Fort Worth, for appellees.

BUCK, J. C. C. Cooper, D. G. Murchison, and A. G. Burns, as managing trustees or partners of the Phœnix Oil Company, an unincorporated joint-stock association operating under a declaration of trust, filed suit on April 4, 1922, in the Seventeenth district court of Tarrant county, Tex., against A. G. McLarren, and other parties thereafter dismissed from the suit, asking for·a mandatory injunction against said McLarren, requiring the latter to turn over to plaintiffs the books, money, and other personal property belonging to the Phœnix Oil Company. Defendant answered by a general demurrer, a special exception, and a general denial, and further pleaded that the plaintiffs, as trustees of the oil company, had on the 28th day of February, 1922, by resolution duly and properly introduced, employed defendant as general manager and secretary and treasurer of the company for a period of one year. He alleged that by reason of said employment the defendant was given full and complete charge of the assets and affairs of the company·for said time, and that he had performed faithfully the duties imposed upon him by said employment, and had done no act furnishing any excuse for plaintiffs to terminate his employment, and that he had faithfully served the interests of the stockholders of the company. He further pleaded that plaintiffs and one J. L. Walker, a stockholder, had conspired together to get control of the books and property of the said company, and to mutilate the books thereof, etc. He prayed that plaintiffs be enjoined from in any way interfering with the performance of his duties as general manager and his possession of the books, money, and other property of the company. He pleaded, in answer to allegations of plaintiffs, that he was not attempting to convert to his own use any of the property or funds of the company, but

that he had all of the funds intrusted to his care or that had come into his possession by virtue of his position as general manager and secretary and treasurer, except that he had paid out of such funds only such amounts as he was directed to pay, including certain current bills and expenses.

On April 15th, defendant filed what he styled his first supplemental answer, in which he asked for the removal of plaintiffs as trustees of said oil company, and that a receiver be appointed for said company. He alleged that the trustees had not been operating said company for the benefit of the stockholders thereof, as they in good con-science were required to do, but had been operating said company for the benefit of J. L. Walker; that the value of the assets of said company was approximately $10,000, and that the company had issued stock in the amount of $100,000, and owed debts aggregating $572.37; that it was to the interest of said stockholders and·to defendant, who owned 59 shares of the par value of $590, that a receiver be appointed. Defendant further pleaded that the Phœnix Oil Company No. 2, Phœnix Petroleum Company, and the John Phœnix Oil Association were all joint associations, and each was operating under a declaration of trust. That the last named was a holding company, holding stock in the other two companies and in the Phœnix Oil Company, and all were partners, each being in partnership with the others. Wherefore defendant prayed that Cooper, Murchison, and Burns be removed as trustees, and that a receiver be appointed to the end that the assets of this company be subserved, and that it may be administered by this court, and that its just and valid debts may be paid, and such assets as may be left may be distributed among the stockholders of said company, and also that a receiver be appointed for said defendants John Phœnix Oil Association, Phœnix No. 2 Company, and Phœnix Petroleum Company.

On the same day that defendant's first supplemental answer was filed, J. C. Walton filed his plea of intervention, alleging that he owned blank shares of stock "in said company" of the par value of blank. He adopted each and all of the allegations in defendant's answer and supplemental answer in regard to the plaintiff trustees and their acts and conduct with reference to the Phœnix Oil Company. He joined in defendant's prayer for·a receiver for all of the four companies.

To these defensive pleadings, plaintiffs filed on April 17th their objections to the action·of the trial court in permitting defendant's supplemental petition to be filed after plaintiffs had introduced their evidence in chief, and had rested, and defendant himself had been offered by the defense

and his direct examination had been completed and the cross-examination begun. The plaintiffs moved to strike out said so-called supplemental answer. In the event said motion should be overruled, plaintiffs interposed certain special exceptions to defendants' pleadings, and concluded with a general denial.

On April 18th defendant under leave of the court filed a trial amendment, in which he sought to go more particularly into the grounds for a receiver. He alleged that all of the present trustees of the four companies, except A. G. McLarren and Fred M. Thompson, were chosen primarily by J. L. Walker, and they had not been conducting the business affairs of the companies for the use and benefit of the stockholders of said companies; that prior to February 25, 1922, said companies had been operated by the following trustees, to wit, J. C. Walton, George H. Campbell, C. H. Walton, and R. J. Burns, who had been attempting in a trustworthy manner to handle said companies for the best interests of the stockholders and in pursuance of the provisions of the declaration of trust under which they were acting; that since June 1, 1920, Walker had been attempting, by fraudulent schemes, to gain control of said companies; that one of the inducements that caused the old trustees, and especially J. C. Walton, to resign, was the representation made that none of the new trustees to be elected were in any way under the control of said Walker; that there had been instituted in the federal District Court, by and through the efforts of said Walker, a suit styled Anna Sterlen v. J. C. Walton et al.; that as a consideration for the dismissal of said suit, the then trustees agreed to resign upon the representation that none of the new trustees to be elected would in any way be domineered over by said Walker; that said representations were untrue, and that all of the trustees thereupon elected, save said McLarren and Thompson, were in fact chosen by said Walker, and since their election said new trustees have been under the control of said Walker. Facts alleged to show such domination by Walker were pleaded. It was alleged that subsequent to his selection as general manager and secretary-treasurer the defendant had at all times faithfully tried to represent the best interests of the stockholders of the companies. It was alleged that the declaration of trust, under which said companies were created, contained no provision for the removal of the trustees; that hence, in order to protect the interests of the shareholders and to enforce the defendant's valid contract of employment, the defendant appealed to the equitable powers of the court.

The court on April 18th rendered judgment for defendant, and appointed a receiver. The plaintiffs have appealed. In the judgment, the trial court found that all of the companies heretofore mentioned were partners with each other.

[1, 2] Under the declaration of trust of the Phœnix Oil Company, the trustees have the absolute control and management of the company's business and affairs, without reservation of such right in the shareholders. Such shareholders have no authority in themselves to remove the trustees, or to elect their successors. The trustees themselves elect new members. The trust agreement was made and the trusteeship created September 27, 1918, and was to continue for five years. Therefore during said time and at the time of the institution of this suit the trustees had the right of control of the affairs of the company and the right to the custody of its assets. Hence we conclude that under the recitation of the declaration of trust, the plaintiffs were entitled to the mandatory injunction asked. If defendant had been employed for a year, and he felt that he had been unjustly discharged, his remedy, if any, was a suit for damages. We do not think that he had the legal right to refuse to deliver the books and funds of the company, and refuse to vacate his position of employment. But in our judgment the trustees did not have the power, under the declaration of trust and under the rules governing trustees and trust estates, to divest themselves of the authority to manage and control the property and the business affairs of the trust estate. The individual trustee might resign, but, so long as they purported to act, the trustees were charged with the duty of managing the estate themselves. Of course, in doing this they had the authority to employ necessary labor and help, which, however, must at all times be subject to their control. A trust can be executed only by the trustee or trustees appointed therefor, while the trustee or trustees are living and have not declined the appointment, or been removed for cause by the court. 26 R. C. L. p. 1372, § 232.

[3-6] But it is urged that the plaintiffs having applied to a court of equity, in their application for a mandatory injunction, the court then had jurisdiction to inquire into the conduct and management of the trust estate, and if the investigation showed that said plaintiffs as trustees were not performing their duties faithfully, the court then had the authority to give any equitable and legal relief proper, and to appoint a receiver. We do not think there was sufficient pleading or evidence to justify the appointment of a receiver for the trust estate. As is said in Pomeroy's Equity Jurisprudence, p. 159, § 89:

"Courts will not interfere with trustees' possession by a receiver unless there is real danger from their misconduct."

The allegations of dishonesty and fraudulent designs on the part of plaintiffs, both in defendant's supplemental petition and his trial amendment, consist of general charges, and no specific act is alleged, except that the plaintiffs authorized the payment of an attorney's fee for filing the suit and representing the plaintiffs in the federal court. Such general allegations are insufficient to justify a trial court to take the property out of the hands of the chosen trustees and to put it into the hands of a receiver. The appointment of a receiver can never be the main purpose of a suit, but a receivership is merely an ancillary remedy, and the appointment should never be made when there is another and safe or expedient remedy, or when the court can find another and less stringent means of protecting the property. 34 Cyc. p. 23.

Without considering the questions raised by appellants that the trial court erred in permitting, over the objection, the supplemental petition to be filed, in which for the first time a prayer for the appointment was contained, after the plaintiffs had introduced their testimony in chief, and in later permitting, over objection, a trial amendment to be filed, we think that the court erred in appointing a receiver under the showing here made.

In the declaration of trust of the Phœnix Petroleum Company, shown in the statement of facts, it is provided that the trustees shall be bonded in some reliable and solvent surety company, licensed and authorized to transact business in the state of Texas, each in the sum of $20,000 to indemnify the shareholders against pecuniary loss by reason of any act or acts of fraud, dishonesty, forgery, theft, embezzlement, or wrongful abstraction or willful misapplication on the part of either of them. The declaration of trust of the Phœnix Oil Company does not contain this provision, or indeed any provision that the trustees shall give bond.

[7] The difficulty of formulating a definition of partnership, at once accurate, comprehensive, and exclusive, is said to be insuperable. Miller v. Simpson, 107 Va. 476, 59 S. E. 378, 18 L. R. A. (N. S.) 976; 20 R. C. L. p. 800, § 2. Chancellor Kent defined a partnership "as a contract of two or more competent persons to place their money, effects, labor, and skill, or some or all of them in lawful commerce or business; and to divide the profits and bear the loss in certain proportions." This definition has been many times quoted with approval. Meehan v. Valentine, 145 U. S. 611, 12 Sup. Ct. 972, 36 L. Ed. 835.

Because Chancellor Kent's definition requires that one or more of the partners shall contribute labor or skill, or something else, this definition has been criticized. 20 R. C. L. p. 801. But it seems to us that the very

244 S.W.—53

nature of the relations between the trustees of the several companies herein considered to their several shareholders is one of trust, and that the trustees of any one of the companies could not engage in a partnership with another company, and thereby divest themselves of the personal duty to manage and control the business of the trust estate confided to their care. In any partnership enterprise between the trustees of one company and of another, there would necessarily be some control and management of the affairs of one company by the trustees of the other. Therefore we conclude that the jurisdiction over the trust estate of the three companies not here cited was not obtained by the trial court, and that error was made in assuming such jurisdiction and in appointing a receiver for the property of the Phœnix Petroleum Company, Phœnix Oil Company No. 2, and John Phœnix Association.

[8-10] To finally dissolve the association, wind up its affairs and distribute its assets would be to go counter to the plain terms of the contract between the shareholders and the trustees, contained in the declaration of trust. Burnett et al. v. Smith et al., No. 10056, 240 S. W. 1007, recently decided by this court in an able opinion by Associate Justice Dunklin. In order for the defendant to escape the binding terms of that contract and for the entire business to be terminated, and that too in the absence of any showing that other stockholders, except the intervener, Walton, desired this to be done, a very clear showing of the necessity should be made, to say the least. It is a familiar rule that equity will not permit a trust to lapse for lack of trustees.

It is also a familiar rule that a court of equity has power to remove trustees upon a proper showing of fraud or unfitness on their part. This is true even though the declaration of trust, under which the association operated, did not reserve to the shareholders the right to remove the trustees. But the removal of the trustees, plaintiffs below, did not justify the trial court in appointing a receiver. If upon a proper showing the trial court found that the present trustees were incompetent or unfaithful to their trust, such trustees could be removed and others appointed. There was no prayer in defendant's answers that other trustees should be appointed, nor was there any showing that the business of the company could not be continued under other trustees.

If the trial court should conclude upon further hearing that the trustees should be required to give bond in some good surety company for the faithful performance of their duties, he should require such bonds to be given.

We do not think the allegation that the

four companies were partners, and proof submitted thereon, would authorize the finding by the court that the four companies were in fact partners with each other, and justify the appointment of a receiver for each and all of them without making the trustees of each company parties. These trust estates were separate, and the trustees thereof were separate, in so far as their duties and relations were concerned.

For the reasons indicated, the judgment of the trial court is reversed, and the cause remanded for other proceedings not inconsistent with this opinion.