**LOONEY** et al. v. **WING** et al.

No. 14778.

Court of Civil Appeals of Texas, Fort Worth,
June 7, 1946.

Rehearing Denied July 5, 1946.

Bryan, Stone, Wade & Agerton, of Fort Worth, for appellant Karl A. Crowley, trustee.

Earl E. Hurt, of Dallas, H. C. Shropshire, of Weatherford, Ballinger & Ballinger, of Miami, Okl., and Lloyd E. Price, of Fort Worth, for appellants Chas C. Looney et al.

Seaberry & Hagman and McCall & McCall, all of Weatherford, for appellees C. T. Riddel et al.

J. B. Stigall, Jr., of Dallas, for appellees Vangie Tidwell et al.

McDONALD, Chief Justice.

We are confronted at the outset of this appeal with a motion to strike the statement of facts, based on the contention that two purported transcripts of the evidence have not been approved by the parties or by the trial court. The transcripts in question were filed in this court on April 20, 1946. The motion to strike was filed on May 24, 1946. Rule 404, of the present procedural rules, which is old Rule 8 for Courts of Civil Appeals, provides:

"Motions Relating to Informalities in Record. All motions relating to informalities in the manner of bringing a case into court shall be filed and entered by the clerk on the motion docket within thirty days after the filing of the transcript in the Court of Civil Appeals, otherwise the objection shall be considered as waived, if it can be waived by the party."

█ Approval by the trial judge of the statement of facts is no longer required where it is approved by the parties. Rule 377. It seems elemental to us that the appellee in a case may waive written approval by himself of the statement of facts, and that, under Rule 404, his failure to object to a statement of facts on file in the Court of Civil Appeals, for more than thirty days after its filing, is sufficient to constitute a waiver of any objection to the statement of facts on the ground that appellee has not approved it. Even after expiration of such thirty day period appellee would have a ready remedy by making application to the appellate court for leave to supplement the record, if there were any omission of matters important to the defense of the case, and, should appellee make it appear that there were inaccuracies in the statement of facts, the appellate court would have full authority to take such steps as might be necessary to make the record speak the truth. The motion to strike the statement of facts is therefore overruled.

For a full discussion of this controversy reference is made to our former opinions in Looney v. Doss, 189 S.W.2d 207, and in Crowley v. Carter, District Judge, 192 S.W.2d 787. As set out more in detail in those opinions, H. H. Tucker, Jr., by virtue of a declaration of trust executed on March 22, 1922, and other instruments subsequently executed, became the sole trustee of certain lands and interests in lands. He sold beneficial interests or shares in the enterprise to many persons, it being estimated that as many as 6,000,000 shares were sold. There was thus created what is often referred to as a Massachusetts or business trust.

In 1934 the present receivership suit was filed in the District Court of Parker County. The immediate purpose of the suit was to meet the emergency created by the fact that Tucker had been sentenced to serve four years in prison for participating in a fraudulent use of the mails. A receiver was appointed, who took charge of the properties of the trust. In 1945 the present proceedings were instituted, in the form of motions filed in the pending receivership suit. The purpose of the present proceedings was to terminate the receivership and have the trust assets turned over to Karl A. Crowley, who was alleged to have been duly appointed trustee as Tucker's suc-

cessor in that office. These matters are all discussed in detail in the opinion in Looney v. Doss, supra.

As shown in that opinion, the District Judge declined to terminate the receivership, and on appeal we held that it was within the authority of the District Judge to refuse to terminate the receivership until notice had been given to the stockholders of the proceedings brought for that purpose. The cause was remanded to the trial court, and a general notice was sent out to the stockholders pursuant to the views expressed in our opinion.

A few of the stockholders, owning only a few hundred of the six million shares outstanding, intervened, seeking to have the trust liquidated under orders of the court below. Following a hearing, the trial court indicated the nature of the judgment he intended to enter, whereupon there was filed in this court the proceeding which is described in Crowley v. Carter, District Judge, Tex.Civ.App., 192 S.W.2d 787. For reasons announced in that opinion, we held that proceeding to be premature. Afterwards the District Judge entered the judgment which we now have under review.

In the judgment last entered in the court below, the court found, and so ordered, that the motion to terminate the receivership and turn the property of the trust over to Karl A. Crowley should be denied. The judgment recites in part:

"The Court finds that this Receivership should be continued at this time for the following reasons among others, to-wit:

"(a) In order that outstanding claims against said Syndicate, including an alleged claim in favor of H. H. Tucker, Jr. for the sum of $22,000.00 may be adjudicated and paid if any liability exists upon the part of the Syndicate, and that expenses of administration may be terminated.

"(b) In order that pending litigation may be terminated.

"(c) In order that the rights of the stockholders may be determined and especially with reference to the claims of the owners of validation certificates and other outstanding evidence of interests, in the property of the Syndicate and indebtedness against the said Syndicate.

"(d) In order that the affairs of the said Texas-American Syndicate may be wound up and the assets sold for the purpose of liquidation."

The judgment then decrees that the petitions of named intervenors be granted "in so far as they pray for a continuance of the Receivership for the protection of the property and for a winding up of the affairs and liquidation of the assets of the said Syndicate." The judgment then expressly denies the petitions of Crowley and others to vacate the receivership and the motion of Crowley to turn the property of the trust over to him as trustee. It then orders the receivership continued "for the purposes herein set out and for the purpose of liquidating the assets of the Texas American Syndicate and distribution of the assets among those legally entitled thereto under future orders of this count."

■ Appellees first seek to uphold the judgment of the trial court on the ground that the record does not show that Karl A. Crowley was duly appointed trustee to succeed Tucker. Crowley's claim of appointment rests upon one or more of three documents. The first is an instrument signed by Tucker, in which he sought to appoint Crowley as his successor.

We have carefully examined the trust indenture and are unable to find in it any authority vested in Tucker to fill a vacancy in the office of trustee. We therefore hold that the appointment by Tucker was ineffective.

■ Crowley next relies on a judgment rendered by one of the District Courts of Dallas County. No attack was made on the validity of Crowley's appointment on the first appeal of the case, and we did not undertake there to decide whether Crowley had been appointed as trustee, leaving that question open for decision upon such proof as might be offered at the next trial of the case. Appellees contend that the judgment of the Dallas District Court is void on its face, first, because the trust indenture provided for filling a vacancy in the office of trustee by a majority of the shareholders, thus presenting a situation where there was no occasion for calling on a court of equity to exercise its extraordi-

nary equitable jurisdiction to prevent the lapsing of a trust for the lack of a trustee; and second, because the judgment shows on its face that it was rendered in an ex parte proceeding without notice to those interested in the trust. We do not believe that the judgment of the Dallas District Court is void on its face, nor do we believe that it is subject to the collateral attack made on it in this suit. That judgment recites, among other things, that Tucker was at the time of the execution of the trust indenture, and still is, a resident of Dallas County; that 6,000,000 shares of stock or beneficial interests in the trust were issued, and that the petitioners in that suit own 3,999,781 of such shares, being a majority of the outstanding shares; that the petitioners, being the owners of a majority of the outstanding stock, have executed powers of attorney conferring upon Tucker full power to do and perform any act which Tucker deems necessary to protect their interests, including the power to execute on their behalf any instrument in writing appointing a substitute trustee, and to prosecute any suits designed to protect their interests; that on March 30, 1945, Tucker executed an instrument in writing appointing Karl A. Crowley as trustee; that Crowley is competent, experienced and qualified to act as trustee and that the best interests of the beneficiaries will be served by his appointment; that the court concludes as a matter of law that the cause comes within its jurisdiction, and that the only necessary party to the action is Tucker, as trustee, but that it is not improper for other persons having beneficial interests in the trust to join in the petition; that the appointment of Crowley by Tucker has the legal effect of making Crowley the successor to all the rights, duties, etc., conferred upon the original trustee by the terms of the trust agreement; and that the powers of attorney executed by the owners of the majority of the stock vested in Tucker, as their attorney in fact, full power and authority to appoint Crowley as trustee. The judgment not only confirms the appointment of Crowley by Tucker, as attorney in fact for the majority of the stockholders, but also permits Tucker to resign as trustee, and appoints Crowley as trustee "by order of this Court."

The decisions are not in entire accord in declaring what persons are necessary parties to a proceeding to appoint a trustee, or what notice is necessary to support such an appointment. A proceeding to remove a trustee seems to be treated as adversary in character, requiring that the trustee sought to be removed be made a party and be given notice of the proceeding. But a proceeding to fill a vacancy already existing, or to accept the resignation of a trustee and appoint a successor, may, at least under some conditions, be ex parte in character, and especially so, we think, where a majority of the stockholders in such a trust as this join in the petition to appoint a trustee. The practical difficulties encountered in making the owners of such a vast number of shares parties to the suit, and giving them notice of the proceeding, are sufficient to invoke the rules of virtual representation where a majority of the stockholders are represented in the proceeding by one to whom they have given powers of attorney to represent them. As against the objection that the trust agreement provided for appointment of a successor by the owners of the majority of the stock, that precise result was reached if the recitals of the Dallas District Court judgment are true, and they must be treated as true on this collateral attack.

Crowley also relies on an instrument executed by Earl E. Hurt, on January 7, 1946, in which Hurt purports to act as attorney in fact for the majority of the shareholders, and in which he ratifies and confirms the appointment of Crowley as trustee. The objection made to this appointment is that the record fails to show any appointment of Hurt as attorney in fact for the stockholders. We overrule this objection. The statement of facts shows that when the Hurt appointment was offered in evidence, appellees objected to its introduction on the ground that Hurt was not shown to be an attorney in fact for the majority of the stockholders. Crowley's attorney then stated: "We have the Powers of Attorney of the Shareholders here giving Mr. Hurt power under Powers of At-

torney to act in appointing Mr. Crowley." Hurt, himself an attorney of record in the case, then said: "I have a suit case here which is filled with Powers of Attorney from thousands of Stockholders in the Syndicate, which I offer." The Court then said: "Objection overruled. We will not encumber the record with those Powers of Attorney, and not stop to examine them. If anyone wants to examine the Powers of Attorney and later renew their objections to them more specifically I will then act on them. I admit the Plaintiff's Exhibit F. into evidence." Appellees' counsel then stated: "We except." The record before us contains no further reference to this matter. In view of the nature of the situation then facing counsel and the Court, and in view of the absence of any further objections shown in the record, we hold that Hurt's power to act for the stockholders was sufficiently shown as against the attack made in this court. Evidently the trial court was satisfied as to the sufficiency of Hurt's authority to act for the stockholders from what he then had before him.

The judgment recites certain specific grounds for continuing the receivership and winding up the affairs of the trust. One is that an alleged claim of $22,000 in favor of Tucker against the trust must be adjudicated. Appellants claim that the record shows that Tucker has released this or any other claim that he may have against the trust, but be that as it may, it seems clear to us that this alleged claim can be litigated in any proper court between Tucker and the trustee to whom the property of the trust is delivered, and that there is nothing about the claim requiring that it be litigated in the receivership action, and especially is this so when the owner of the alleged claim does not seek to have it litigated in the present suit or have the receivership continued in order to protect any rights that Tucker might have.

Another ground is that other claims against the receivership may be adjudicated. We find nothing in the record suggesting that there are other claims which require the extraordinary remedy of receivership to protect the owners of those claims. We find nothing in the record to suggest that any such claims cannot be litigated in ordinary litigation with the trustee. The only other claims suggested by the record are those of persons to whom Tucker had issued various types of securities, if they may be called such, which may or not be, for aught that the present record shows, enforceable claims against the properties of the trust. We find nothing to suggest that all owners of shares in the trust, or owners of other interests sold by Tucker, cannot obtain full relief without having the trust business liquidated in this suit.

The most serious ground assigned for winding up the trust is presented in this court by some of the appellees, although not expressly mentioned in the judgment. It is that the trust indenture expressly declares that the shareholders are not liable for debts of the trust, whereas, under the Texas law, as declared in Thompson v. Schmitt, 115 Tex. 53, 274 S.W. 554, and in other cases not necessary to cite, the shareholders are liable as partners for the debts of the trust. Appellees rely on the decision in Means v. Limpia Royalties, Tex.Civ.App., 115 S.W.2d 468, writ dismissed; and especially on the opinion in O'Dell v. Grubstake Inv. Ass'n, Tex.Civ.App., 38 S.W.2d 151, 152, writ dismissed. In the latter opinion it is said:

"It is perfectly obvious that all the shareholders executed the trust agreement in the mistaken and controlling belief that the stipulation against the creation of partnership relations or of individual liability of the shareholders for the debts or acts of the association or of the trustees in its behalf would be valid in law, and would effectuate such exemption. The law has intervened to eliminate that stipulation from the contract, under the remaining provisions of which, if enforceable, the managing trustee may proceed at will during the next eight years to bind all the shareholders, individually, and as unwilling partners, to personal liability for any debt he may see fit to incur, or any act he may perform, in the name of the association. Such a contingency was never contemplated by the parties, whose minds never met in agreement upon the contract

as now construed by the courts and insisted upon by appellee, whereby the parties are deprived of the very protection in consideration of which they entered into the agreement actually made. The law having thus emasculated the contract, nullified material and controlling provisions which permeate the entire agreement, destroyed the consideration moving the parties to execute it, and rendered its remaining provisions palpably unconscionable, equity should intervene to terminate the agreement in its entirety and relieve the parties of the unconscionable burdens imposed upon them by the remaining provisions. We conclude that the record presents a case entitling appellants to cancellation of the contract, dissolution of the partnership created by the contract, to an accounting from the trustees, and to a receiver for the purpose of winding up the affairs of the association."

Appellants rely principally on such cases as Burnett v. Smith, Tex.Civ.App., 240 S. W. 1007; Phœnix Oil Co. v. McLarren, Tex.Civ.App., 244 S.W. 830; Kountze v. Smith, 135 Tex. 543, 144 S.W.2d 261; and State Street Trust Co. v. Hall, 311 Mass. 299, 41 N.E.2d 30, 156 A.L.R. 13. In Burnett v. Smith, supra, involving a trust somewhat like this one, the court said [240 S.W. 1009]:

"To finally dissolve the association, wind up its affairs, and distribute its assets would be to go counter to the plain terms of that contract which is binding upon the plaintiffs and all other stockholders, even though it should be held to constitute in law a partnership in its relation to creditors. In order for the plaintiff to escape the binding terms of that contract, and for the entire business to be terminated, and that, too, in the absence of any showing that other stockholders desired that to be done, a very clear showing should be made, to say the least."

The remedy clearly suggested to the stockholders was to apply to the court, if the facts warranted, for removal of the trustees and appointment of new ones if fraud was being practiced in the management of the trust. We should here say that there is nothing in either pleadings or evidence which can be construed as an attack upon Mr. Crowley's competence to handle the affairs of the trust, nor is there any charge borne out by pleadings or proof that he will mismanage the trust if it is turned over to him.

The holding in Phœnix Oil Co. v. McLarren, supra, is to the same effect.

In State Street Trust Co. v. Hall, supra, will be found a careful discussion of the distinction between the right of a partner in the ordinary partnership to wind up the partnership at any time, and the right of the holder of a beneficial interest to do so in a trust estate such as the present one, even though in the latter case the holder of the beneficial interest may be liable to creditors as a partner. The difference in the two cases lies in the difference in the rights of the partners, so-called, as between themselves. In the one instance a partner has the right to wind up the partnership at any time, in the other he does not, although in both instances the partners have the same liability as to creditors of the business.

We are not willing to hold that the intervenors in this case, who own less than one per cent of the outstanding stock, are entitled to continuance of the receivership in order that the trust may be wound up, when the clear import of the evidence is that a majority of the stockholders in this very large business desire that it continue in operation. On the first appeal we held that the trial court, if he saw fit, might reasonably give some sort of notice to the stockholders of the move to terminate the receivership, so that, if they had valid objection to such a move, they might have opportunity to be heard. The notice was given, and produced a minutely small opposition, considered in proportion to the amount of stock outstanding, to the move to terminate the long continued receivership and turn the trust over to the newly appointed trustee. Under elemental principles, receivership is a drastic remedy. It is not to be resorted to when an adequate remedy at law is available. In any equitable proceeding there must be some balancing of convenience of the parties. If the intervenors purchased their small

amount of stock under a misrepresentation of fact concerning their personal liability, they might properly sue to rescind their purchases, if it is not now too late because of the rules of limitations and laches. It is going too far to hold that this large enterprise should be liquidated at the instance of the owners of a tiny percentage of the outstanding stock simply on the ground that they have discovered more than twenty years after the organization of the trust that they are personally liable for its debts.

We are not certain that we can harmonize all that is said in the opinions in O'Dell v. Grubstake Inv. Ass'n and Means v. Limpia Royalties, with all that is said in the opinions in the other cases above cited, but when we take an overall view of the comparative facts in the cases cited, and the results reached in each, we find nothing in any of them at variance with our opinion that the record in the case before us does not justify a judgment continuing the receivership and winding up the business of the trust.

We therefore reverse the judgment of the trial court, and remand the cause with instructions to terminate the receivership and require a final accounting from the receiver forthwith, and to turn over the properties of the trust to Karl A. Crowley as trustee.